# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOLING AIR MEDIA INC., | Case No. 1:19-cv-00084-DAD-SKO |
| Plaintiff, | |
| v. | **FINDINGS AND RECOMMENDATIONS THAT PLAINTIFF'S MOTION TO MODIFY THE SCHEDULING ORDER AND AMENDED MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT BE GRANTED AND THE CASE REMANDED** |
| PANALPINA INC., EVA AIRWAYS CORPORATION, and DOES 1 through 50, | |
| Defendants. | (Doc. 15) |

## I. INTRODUCTION

On June 14, 2019, Plaintiff Boling Air Media Inc. filed its Motion to Modify the Scheduling Order and Amended Motion for Leave to File First Amended Complaint (together, the "Motion"). (Doc. 15.) Defendant Panalpina Inc. ("Panalpina") filed a "response" to the Motion on July 8, 2019 (Doc. 19), and Defendant EVA Airways Corporation ("EVA Airways") filed an opposition brief on July 10, 2019. (Doc. 20.) Plaintiff filed reply briefs on July 17, 2019. (Docs. 21 & 22.) The undersigned reviewed the parties' papers and all supporting material and found the matter suitable for decision without oral argument pursuant to U.S. District Court for the Eastern District of California's Local Rule 230(g). The hearing set for July 24, 2019, was therefore VACATED. (Doc. 23.)

For the reasons set forth below, it is RECOMMENDED (1) that the Motion be GRANTED and (2) upon filing of the First Amended Complaint, that the case be REMANDED.[1]

---

[1] The Motion was referred to the undersigned by order entered June 20, 2019. (Doc. 16.)

## II. BACKGROUND

**A. Factual Background[2]**

Plaintiff is an advertising marketing firm located in Fresno, California, that offers a variety of aerial advertising mediums, including thermal airships. (Doc. 1-1, ¶ 6.) In February 2018, Skyrainbow Airlines Co., LTD. ("Skyrainbow"), a promoter and event organizer in Taiwan, requested that Plaintiff fly one of its thermal airships at an international balloon festival to be held in June 2018 in Taiwan. (*Id.* ¶ 7.)

Plaintiff and Skyrainbow ultimately entered into a contract for Plaintiff to fly its thermal airship at two festivals in Taiwan, one located in Taoyuan, and the other in Taitung. (Doc. 1-1, ¶ 7.) Skyrainbow requested and Plaintiff agreed to fly its thermal airship with a red "envelope" (the balloon portion of the airship) at the Taoyuan festival and with a white envelope at the festival in Taitung. (*Id.*) Skyrainbow arranged for shipment of Plaintiff's thermal airship and the two envelopes via airfreight through Panalpina, an international freight forwarder that arranges for the worldwide transportation of goods on behalf of its customers. (*Id.* ¶ 8.)

On June 11, 2018, Plaintiff entered into a contract with Panalpina for the shipment of its thermal airship and envelopes. (Doc. 1-1, ¶ 9 and Ex. A.) Plaintiff prepared the airship, envelopes, and related equipment for transport by Panalpina by packing it onto two separate pallets. (*Id.* ¶ 11.) Per Skyrainbow and Panalpina's requests, the pallets were strapped down with straps, bubble wrapped, and covered and wrapped with orange shrink wrapping. (*Id.*)

On June 16, 2018, the pallets were picked up at Plaintiff's warehouse for transportation to Los Angeles, where they were to be shipped to Taiwan on an airplane owned by EVA Airways. (Doc. 1-1, ¶ 12.) Panalpina issued an "Non-Negotiable Air Waybill" ("Air Waybill") acknowledging receipt of the thermal airship and related equipment in good order and condition. (*Id.* ¶ 13 and Ex. B.) The Waybill listed Skyrainbow as the consignee and the "chargeable weight" of the shipment as 2,906 kilograms. (*Id.* ¶ 33 and Ex. B.) After the thermal airship arrived in Taiwan, Plaintiff received a second Air Waybill issued by Panalpina for the same shipment, which

---
[2] The factual background summarizes Plaintiff's allegations as set forth in the complaint, which is currently the operative pleading. (Doc. 1-1.)

lists "Win Air Business Jet, Co." ("Win Air") as the consignee and the chargeable weight of the shipment as 10,000 kilograms. (*Id.* ¶ 33 and Ex. D.) Plaintiff alleges that the second Air Waybill was created without its knowledge and for the purpose of adding additional items to the shipment, to be routed to Win Air, "an entity unknown." (*Id.*)

On June 21, 2018, Plaintiff's crew arrived in Taiwan and noticed that Defendants had unpacked the thermal airship, envelopes, and related equipment from the two pallets and repacked the materials onto three pallets with clear shrink wrapping, with additional property belonging to another party contained in the third pallet. (Doc. 1-1, ¶¶ 15, 16.) Plaintiff's crew further observed that the thermal airship's fuel line had been ruptured while in transport and its "inflation fan" had been damaged and rendered inoperative. (*Id.* ¶ 17.) Plaintiff borrowed an inflation fan and repaired the fuel leak, such that it was able to fly its thermal airship with the red envelope at the Taoyuan festival between June 22–30, 2018. (*Id.* ¶ 18.)

On June 26, 2018, Plaintiff's inspector inspected the white envelope and noted the fabric ripped and "basically crumbled" when stretched by hand. (Doc. 1-1 ¶ 19.) Plaintiff alleges the envelope had been damaged in transit due to exposure to a "corrosive chemical." (*Id.* ¶ 20.) Because the damage to the envelope prevented Plaintiff from flying its thermal airship at the Taitung festival between July 2–12, 2018 as planned, Skyrainbow disinvited Plaintiff to fly at the festival. (*Id.* ¶¶ 21–22.)

On July 2, 2018, after having packaged the thermal airship for return shipment, Plaintiff's crew returned to the United States. (Doc. 1-1. ¶ 23.) Plaintiff alleges that, in violation of their contract with Plaintiff, Skyrainbow refused to pay Panalpina for the return of Plaintiff's thermal airship, and Panalpina refused to arrange transportation of the airship back to Plaintiff. (*Id.* ¶¶ 24–25.)

On August 2, 2018, Plaintiff made a claim to EVA Airways for the damage to the thermal airship that occurred during transit. (Doc. 1-1, ¶ 26.) An EVA Airways employee, Jeffrey Ping ("Ping"), denied responsibility for the damage and referred Plaintiff to Panalpina. (*Id.* ¶¶ 27.) Plaintiff then contacted Jay Flores ("Flores"), a Panalpina employee, to advise him that Plaintiff would be "holding Panalpina responsible for the damages to the thermal airship and theft of

1 equipment." (*Id*. ¶ 32.) Flores referred Plaintiff to his supervisor, who provided "insurance information only." (*Id*.)

Plaintiff thereafter secured another international freight forwarder, Team Worldwide Shipping ("Team Worldwide"), to locate and return the thermal airship back to Plaintiff, which was received on September 27, 2018. (Doc. 1-1, ¶¶ 29–30.) According to Plaintiff, upon receipt and inspection Plaintiff noticed that, prior to Team Worldwide taking custody of the thermal airship, it had been damaged as a result of being "left outside and exposed to the elements" during a "major typhoon" in Taiwan and also that "parachutes and radios had been removed." (*Id*. ¶ 31.)

**B.     Procedural Background**

After submitting claims for damages with both Panalpina and EVA Airways in November–December 2018 (Doc. 1-1 ¶¶ 34–35), Plaintiff filed a complaint against them in Fresno County Superior Court on December 18, 2018. (Doc. 1-1.) The complaint alleges causes of action for breach of contract and negligence. (*Id*.) On January 17, 2019, Defendants removed the lawsuit to this Court on grounds of diversity jurisdiction. (Doc. 1.)

The parties participated in a scheduling conference with the undersigned on March 28, 2019. (Doc. 9.) A week prior to the scheduling conference, the parties submitted a joint scheduling report, in which Plaintiff indicated it intended to amend the complaint "to add a conversion cause of action and a cause of action related to allegations of smuggling." (Doc. 8.) The undersigned issued a scheduling order on April 2, 2019, which provides that "[a]ny motions or stipulations requesting leave to amend the pleadings must be filed by no later than May 28, 2019." (Doc. 10, 2:21–22.)

Plaintiff filed a motion for leave to file an amended complaint on May 28, 2019. (Doc. 12.) On June 14, 2019, Plaintiff filed the instant, revised Motion, thereby mooting Plaintiff's original motion. (*See* Docs. 15, 17 (denying original motion as moot).)

### III.     DISCUSSION

As the instant Motion was filed after the amendment deadline, the Court will first determine whether Plaintiff has demonstrated good cause pursuant to Federal Rule of Civil Procedure 16. *See United States ex rel. Terry v. Wasatch Advantage Grp*., LLC, 327 F.R.D. 395, 403 (E.D. Cal. 2018). (*See also* Doc. 10 at 2:24–26.)

4

**A.     Plaintiff Has Shown Good Cause to Modify the Schedule Pursuant to Rule 16**

   **1.     Legal Standard**

Federal Rule of Civil Procedure 16(b) provides that the district court must issue a scheduling order that limits "the time to join other parties, amend the pleadings, complete discovery, and file motions." Fed. R. Civ. P. 16(b)(1)–(3). A scheduling order "may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). The "good cause" standard "primarily considers the diligence of the party seeking the amendment." *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992). To establish good cause, the party seeking the modification of a scheduling order must generally show that even with the exercise of due diligence, they cannot meet the requirement of that order. *Id*. The prejudice to other parties, if any, may be considered, but the focus is on the moving party's reason for seeking the modification. *Id*. If the party seeking to amend the scheduling order fails to show due diligence, the inquiry should end, and the court should not grant the motion to modify. *Zivkovic v. S. Cal. Edison, Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002) (citing *Mammoth Recreations*, 975 F.2d at 609). "Relevant inquiries [into diligence] include: whether the movant was diligent in helping the court to create a workable Rule 16 order; whether matters that were not, and could not have been, foreseeable at the time of the scheduling conference caused the need for amendment; and whether the movant was diligent in seeking amendment once the need to amend became apparent." *Wasatch Advantage Grp.*, 327 F.R.D. at 404 (internal quotation marks and citation omitted) (alteration in original).

   **2.     Analysis**

Plaintiff seeks to amend the complaint to join the following as defendants: (1) Skyrainbow; (2) Win Air; (3) Panalpina employee Flores; (4) Zmac Transportation Solutions, LLC ("Zmac"); (5) Comfreight Financial ("Comfreight"); (6) Etchegoinberry Trucking ("Etchegoinberry"); and (7) Mercury Air Cargo Services Inc. ("Mercury"). (*See* Doc. 15-1, Declaration of Steven R. Stoker in Support of Amended Motion for Leave to File First Amended Compl. ("Stoker Decl."), ¶ 4 and Ex. 1.) Plaintiff also seeks to add causes of action for conversion, trespass to chattels, and breach of a bailment contract. (*See id*. ¶ 5 and Ex. 1.) Plaintiff bases its request in part on information it received in discovery from Panalpina and EVA Airways on May 28 and June 7, 2019, respectively. (Doc.

15 at 3; Doc. 22 at 8–9.)

On May 28, 2019, the amendment deadline, Plaintiff filed its original motion for leave to amend the complaint to join as defendants Skyrainbow, Zmac, Comfreight, and Etchegoinberry, and to add causes of action for conversion, trespass to chattels, and breach of contract of bailment. (Doc. 12.) Later that same day, Plaintiff's counsel received 314 pages of discovery documents from Panalpina. (Doc. 15 at 3; Stoker Decl. ¶ 11.) Plaintiff reviewed the documents and determined, on May 30, 2019, that they included allegedly forged documents created by Panalpina employee Flores. (Stoker Decl. ¶¶ 12–13.) Plaintiff contends that these documents provide a basis for joining Flores and Win Air as defendants, in addition to those identified in Plaintiff's original motion.

On June 7, 2019, Plaintiff's counsel received discovery documents from EVA Airways, from which Plaintiff contends it first learned the identity of Mercury and the basis to join it as a defendant. (Doc. 15 at 3; Stoker Decl. ¶ 15.) According to Plaintiff, Mercury is the "warehouse in Los Angeles, California, that received Plaintiff's thermal airship from the trucker that transported the shipment from Plaintiff's place of business in Fresno, California." (Doc. 15 at 3.) Plaintiff filed the instant Motion on June 14, 2019, one week following receipt of the discovery from EVA Airways.

EVA Airways contends that Plaintiff has not established "good cause" under Rule 16(b)(4) because it has not shown that the identities of the proposed defendants, aside from Mercury, were not or could not have been discovered before the amendment deadline of May 28, 2019.[3] (Doc. 20 at 19–20.) With respect to Mercury, EVA Airways asserts that Plaintiff could have identified it as a prospective defendant sooner had Plaintiff propounded discovery seeking the name of any warehouse facilities where cargo awaiting transportation was housed. (*Id*. at 19.)

The joinder of Skyrainbow, Zmac, Comfreight, and Etchegoinberry as defendants in this case was requested in Plaintiff's original motion. (*See* Doc. 12.) The original motion was timely; it was filed on May 28, 2019, the amendment deadline. (*See id*.; Doc. 10 at 2:21–22.) Because Plaintiff timely preserved the issue by filing a motion, albeit now moot, within the time period specified in the Court's scheduling order, it is not required to show in the instant Motion good cause

---

[3] Panalpina's "response" does not address Plaintiff's argument that "good cause" exists to modify the scheduling order, and, as such, it concedes this point. *See Pecover v. Elec. Arts Inc*., 633 F.Supp.2d 976, 984 (N.D. Cal. 2009) ("[P]laintiffs have effectively conceded, by failing to address the issue in their opposition memorandum.").

for the proposed joinder of these defendants. *See, e.g., Cuevas v. City of Campbell*, No. 5:12–CV–03087–EJD, 2012 WL 5077153, at *2 (N.D. Cal. Oct. 18, 2012) (court not required to apply a good cause standard to a motion seeking leave to amend that is filed prior to the deadline for amendments). *See also Oushana v. Lowe's Home Centers, LLC*, Case No. 1:16-cv-01782-AWI-SAB, 2017 WL 1292717, at *2–3 (E.D. Cal. Apr. 7, 2017) (plaintiffs need not show good cause pursuant to Fed. R. Civ. P. 16(b) in order to amend the complaint where no modification of the scheduling order). EVA Airways' contention to the contrary is without merit.

With respect to the requested joinder of Win Air, Panalpina employee Flores, and Mercury, allowing parties to amend based on information obtained through discovery is common and well established. *See Fru-Con Constr. Corp. v. Sacramento Mun. Util. Dist*., No. 05-0583, 2006 WL 3733815, at *3–5 (E.D. Cal. Dec. 15, 2006) (collecting cases in which court granted leave to amend based on "new information revealed through discovery"); *see also Macias v. City of Clovis*, No. 1:13-CV-01819-BAM, 2016 WL 1162637, at *4 (E.D. Cal. Mar. 24, 2016) ("[D]iscovery of new evidence is often sufficient to satisfy the good cause standard" under Rule 16(b).). In general, the focus of the diligence inquiry under Rule 16(b) is the time between the moving party's discovery of new facts and its asking leave of the court to file an amended pleading. *See Zivkovic*, 302 F.3d at 1087–88.

Here, it is undisputed that Plaintiff first learned of allegedly forged documents on May 28, 2019, when it received Panalpina's 314-page production, and of the existence of Mercury on June 7, 2019, when it received the production from EVA Airways. Thus, while the identities of Win Air and Flores may have already been known to Plaintiff prior to May 28, 2019, the basis for Plaintiff's claims against them were not known until that date. As for Mercury, Plaintiff did exactly as EVA Airways posits it should have: shortly after the Court issued its scheduling order, Plaintiff propounded discovery requests to EVA Airways seeking documents exchanged between it and entities other than Panalpina. (*See* Doc 20-1, Declaration of Brandon K. Franklin in Support of EVA Airways' Memo. of P&As ("Franklin Decl.") at ¶ 5 and Ex. B.) Despite not having made a more "specific request," Plaintiff nevertheless was able to discover Mercury's identity from EVA

1 | Airways on June 7, 2019.[4]  It then filed the instant Motion seven days later.

Based on the above, the undersigned finds that Plaintiff did not delay in seeking amendment and has therefore shown "good cause" under Rule 16(b) to modify the scheduling order for the purpose of seeking to amend the complaint.[5] *See, e.g., Nucal Foods, Inc. v. Quality Egg LLC,* No. CIV S–10–3105–KJM–CKD, 2012 WL 260078, at *5 (E.D. Cal. Jan. 27, 2012) ("Because plaintiff moves to amend [its] complaint based on facts uncovered during discovery, the court finds that plaintiff has good cause to seek leave to amend. Plaintiff could not have exercised a greater degree of diligence in order to amend at an earlier state in litigation.") (internal citations omitted); *AZ Holding, L.L.C. v. Frederick*, No. CV–08–0276, 2009 WL 3063314, at *3 (D. Ariz. Sept. 22, 2009) (finding plaintiff reasonably diligent when seeking leave one month after incident, while discovery was still open); *Fru-Con Const. Corp.*, 2006 WL 3733815, at *4 (finding that the defendant "acted with reasonable diligence" in moving for leave to amend its counterclaim "roughly two months" after learning new facts at the deposition).

**B.     Plaintiff May Amend the Complaint to Join Non-Diverse Defendants**

As part of its amendment, Plaintiff seeks to join as defendants Etchegoinberry, Panalpina employee Flores, and Mercury, all of whom are citizens of California. (*See* Stoker Decl. ¶ 3 and Ex. A.) EVA Airways opposes the addition of these putative defendants, whose joinder would destroy diversity and require remand under 28 U.S.C. § 1447. (*See* Doc. 20.) Panalpina "does not oppose in principle" the filing of an amended complaint by Plaintiff but opposes the Motion only to the extent Plaintiff seeks to allege a cause of action for breach of a written contract without either attaching the entire contract to the amended complaint or setting forth the terms of the contract verbatim therein. (*See* Doc. 19.)

**1.     Legal Standard**

In support of the Motion, Plaintiff relies on Federal Rule of Civil Procedure 15(a). (*See* Doc. 15.) Rule 15(a) provides that courts "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). EVA Airways contends that Rule 15(a) is not applicable and that only 28

---

[4] This begs the question (unanswered by the parties' briefing) why, if Plaintiff propounded discovery to Eva Airways on April 16, 2019, Eva Airways did not produce responsive documents until almost two months later.
[5] The proposed amendment does not appear to require any additional modifications to the scheduling order.

8

1  U.S.C. § 1447(e) governs Plaintiff's Motion. (*See* Doc. 20.) Section 1447(e) states: "If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court." 28 U.S.C. 1447(e).

While the Ninth Circuit has not addressed the issue, several district courts have determined that "the proper standard for deciding whether to allow post-removal joinder of a diversity-destroying defendant is set forth in 28 U.S.C. 1447(e)." *Boon v. Allstate Ins. Co.*, 229 F. Supp. 2d 1016, 1019 n.2 (C.D. Cal. 2002) (citations omitted); *see also Hardin v. Wal-Mart Stores, Inc.*, 813 F. Supp. 2d 1167, 1173 (E.D. Cal. 2011) ("Plaintiffs may not circumvent 28 U.S.C. § 1447(e) by relying on Fed .R. Civ. P. 15(a) to join non-diverse parties.") (citing *Clinco v. Roberts*, 41 F. Supp. 2d 1080, 1086 (C.D. Cal. 1999)).

Section 1447(e) is "couched in permissive terms" and "clearly gives" district courts discretion in deciding whether to permit or deny joinder of a non-diverse defendant. *Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 691 (9th Cir. 1998); *see also IBC Aviation Servs., Inc. v. Compania Mexicana de Aviacion, S.A. de C.V.*, 125 F. Supp. 2d 1008, 1011 (N.D. Cal. 2000) ("Under 1447, whether to permit joinder of a party that will destroy diversity remains in the sound discretion of the court."). In deciding whether to deny or permit joinder under 1447(e), courts typically analyze the following six factors:

> (1) [W]hether the party sought to be joined is needed for just adjudication and would be joined under Federal Rule of Civil Procedure 19(a); (2) whether the statute of limitations would preclude an original action against the new defendants in state court; (3) whether there has been unexplained delay in requesting joinder; (4) whether joinder is intended solely to defeat federal jurisdiction; (5) whether the claims against the new defendant appear valid; and (6) whether denial of joinder will prejudice the plaintiff.

*IBC Aviation*, 125 F. Supp. 2d at 1011 (internal citations omitted). The undersigned will address each of these factors below.

///

///

### 2. Analysis

#### a. Just Adjudication and Rule 19(a)

Federal Rule of Civil Procedure 19 "requires joinder of persons whose absence would preclude the grant of complete relief, or whose absence would impede their ability to protect their interests or would subject any of the parties to the danger of inconsistent obligations." *Clinco*, 41 F. Supp. 2d at 1082 (citing Fed. R. Civ. P. 19(a)). This standard is generally met "when failure to join will lead to separate and redundant actions," but not when the defendants whose joinder is sought "are only tangentially related to the cause of action or would not prevent complete relief." *Boon*, 229 F. Supp. 2d at 1022. "Although courts consider whether a party would meet [Rule] 19's standard for a necessary party, amendment under § 1447(e) is a less restrictive standard than for joinder under [Rule] 19." *IBC Aviation,* 125 F. Supp. 2d at 1011–12 (citations omitted).

Plaintiff contends that Etchegoinberry, the trucking company that allegedly transported the thermal airship to Los Angeles, and Mercury, the warehouse which allegedly received the airship in Los Angeles on behalf of EVA Airways, are necessary under Rule 19 because they were within the "chain of custody" of Plaintiff's property when it was damaged and misused. (*See* Doc. 22 at 4–5.) Flores is also necessary, according to Plaintiff, because he was the "principal person responsible" for diverting the thermal airship from its approved destination by allegedly forging Plaintiff's documents. (*See id.* at 5.)

EVA Airways implicitly acknowledges that denying the Motion may lead to a separate and redundant actions. (*See* Doc. 20 at 17.) However, EVA Airways asserts that, under the Supreme Court's decision in *Temple v. Synthes Corp., Ltd.*, 498 U.S. 5, 7 (1990), joinder is not appropriate under this factor because "[j]oint tort feasors are not necessary parties pursuant to Rule 19(a)." (Doc. 20 at 10.) EVA Airways' contention is not persuasive. First, in *Temple*, the Supreme Court found that Rule 19 did not prohibit a plaintiff's litigation strategy of suing one defendant in federal court and other defendants in state court, even though the claims arose from a single occurrence. 498 U.S. at 7. Since the standard under 28 U.S.C. § 1447(e) is less restrictive than Rule 19's standard, *Temple* does not preclude a finding that joinder of Etchegoinberry, Mercury, and Flores is necessary for just adjudication the purposes of section 1447(e).

More importantly, Plaintiff's theory of liability is not that Etchegoinberry, Mercury, Flores, and the other proposed defendants are joint tortfeasors, *i.e.*, that they together contributed to the damage to Plaintiff's property and are therefore jointly and severally liable for Plaintiff's injury. *See* "Tortfeasor," BLACK'S LAW DICTIONARY (11th ed. 2019). Instead, Plaintiff alleges that, somewhere between release of the thermal airship in California and its receipt in Taiwan, the airship sustained damage that could have been caused by any *one* of those in the chain of possession, such that liability would *singularly* lie with that entity. (*See* Stoker Decl. ¶3 and Ex. A.)

Plaintiff's proposed amendment pleads that Etchegoinberry and Mercury had possession of Plaintiff's thermal airship during the time period it sustained damage, and that Flores was the Panalpina employee who allegedly forged documents that facilitated the diversion of the airship to Win Air, which resulted in damage and unauthorized use of Plaintiff's property. All three parties appear to well exceed the requisite "tangential" link to Plaintiff's claims for negligence, trespass, and breach of bailment contract. *See IBC Aviation*, 125 F. Supp. 2d at 1012. Indeed, as both EVA Airways' and Panalpina's answers indicate, it is possible that they will blame Etchegoinberry, Mercury, and/or Flores at trial, and will point to their empty chairs if they are not joined as defendants. (*See* Doc. 4 at 7; Doc. 5 at 5–6.) Moreover, if the Motion were denied, Plaintiff would be forced to litigate parallel lawsuits in separate forums based on many of the same facts that underlie its original complaint, which would directly frustrate the main purpose of Rule 19 and unnecessarily tax judicial resources. *See CP Nat'l Corp. v. Bonneville Power Admin.*, 928 F.2d 905, 912 (9th Cir. 1991) (explaining that Rule 19 was designed to prevent "wasteful litigation"); *see also Palestini v. General Dynamics Corp.*, 193 F.R.D. 654, 658 (S.D. Cal. 2000). Accordingly, the undersigned finds that the inclusion of Etchegoinberry, Mercury, and Flores in the lawsuit would lead to a just adjudication of the entire dispute. This factor weighs in favor of granting the Motion.

### b. Statute of Limitations

Plaintiff and EVA Airways agree that the statute of limitations would not bar Plaintiff from bringing suit against Etchegoinberry, Mercury, and Flores in a separate action, as California has a three-year statute of limitations on actions for damage to property. *See* Cal. Code Civ. Proc. § 338(c). Thus, the second factor favors denying the Motion. *See Clinco*, 41 F. Supp. 2d at 1083

("[Plaintiff] does not argue that a new action against [the proposed defendant] would be time-barred. Therefore, this factor does not support amendment.").

### c. Unexplained Delay

As forth above, the Court finds that Plaintiff did not unduly delay in seeking to join Mercury and Flores as defendants. *See* Section III.A.2, *supra*. With respect to the joinder of Etchegoinberry and the three additional causes of action, EVA Airways contends that Plaintiff inexplicably waited five months after it filed its complaint before seeking to amend its complaint. (*See* Doc. 20 at 12.) The record demonstrates, however, that Plaintiff pursued amendment sooner. Plaintiff's counsel made clear during the meet and confer discussions prior to the parties' scheduling conference on March 28, 2019, that Plaintiff intended to amend the complaint "to add a conversion cause of action and a cause of action related to allegations of smuggling." (Doc. 8.) On April 10, 2019, Plaintiff sent defense counsel a proposed amended complaint and a request that they stipulate to its filing. (Stoker Decl. ¶ 16 and Ex. 2.) Plaintiff sent a revised amended complaint, seeking to join Etchegoinberry and to add three causes of action, and stipulation to defense counsel via email on May 13, 2019. (*See id*.) Defense counsel responded on May 14, 2019, that Defendants would not stipulate to the filing of an amended complaint based on Plaintiff's failure to attach "complete copies" of the Air Waybills to it. (*See id*.) Plaintiff filed its original motion to amend, seeking to join Etchegoinberry and the additional causes of action, only two weeks later.

This timeline evidences no unexplained delay. Even assuming *arguendo* Plaintiff waited five months after filing the complaint before seeking to amend, such delay is not unreasonable. *See, e.g., Aqua Connect, Inc. v. Code Rebel, LLC*, No. CV 11–5764 (MANx), 2012 WL 1535769, at *2 (C.D. Cal. Apr. 27, 2012) (five-month delay between filing of a complaint and request for leave to amend is not unreasonable); *Boon*, 229 F. Supp. 2d at 1023 (motion filed ten weeks after the filing of the initial complaint is timely); *Clinco*, 41 F. Supp. 2d at 1083 (motion to amend filed six weeks after filing of the initial complaint is timely). Additionally, this case is still in its early stages: non-expert discovery remains open until November 13, 2019, and the dispositive motion cutoff is not until February 25, 2020. (*See* Doc. 10.) This factor weighs in favor granting the Motion.

///

#### d. Plaintiff's Motive

This factor also favors joinder. EVA Airways contends that Plaintiff seeks to join the non-diverse defendants "solely for the purpose of defeating federal subject matter jurisdiction." (Doc. 20 at 14–15.) Though Plaintiff's motive is relevant, "[s]uspicion of diversity destroying amendments is not as important now that § 1447(e) gives courts more flexibility in dealing with the addition of such defendants." *IBC Aviation*, 125 F. Supp. 2d at 1012; *see also Trotman v. United Parcel Serv.*, No. C–96–1168–VRW, 1996 WL 428333, at *1 (N.D. Cal. July 16, 1996) ("The legislative history to 1447(e) also suggests that it was intended to undermine the doctrine employed by some courts that amendments which destroyed diversity were to be viewed with suspicion.").

The undersigned agrees with the *IBC Aviation* court that it should "decline[ ] to impute an improper motive to Plaintiff simply because Plaintiff seeks to add a non-diverse defendant post-removal." *Id*. There is no evidence that Plaintiff filed the Motion for the improper purpose of delaying the proceedings. *See, e.g., Reynolds v. Diamond Pet Food Processors of California, LLC*, Case No. 2:15-cv-02118-JAM-AC, 2016 WL 1711671, at *5 (E.D. Cal. Apr. 29, 2016). The record supports Plaintiff's contention that it first learned essential facts about Mercury and Flores in discovery in June 2019. Plaintiff's counsel put EVA Airways on notice that he intended to amend the complaint to add additional tort claims as early as March 2019, from which EVA Airways could have reasonably inferred included adding parties such as Etchegoinberry (which, as EVA Airways points out, was identified in Plaintiff's March 14, 2019 initial disclosures, *see* Franklin Decl. ¶ 4 and Ex. A). Plaintiff is now simply following through with its stated intention, in view of newly-discovered facts.

#### e. Apparent Validity of Plaintiff's Claims

In the proposed amended complaint, Plaintiff alleges claims of negligence, bailment, and trespass to chattels against Etchegoinberry, Mercury, and Flores. (Stoker Decl. ¶ 5 and Ex. 1.) EVA Airways urges the Court to scrutinize the proposed amended complaint to determine whether Plaintiff can ultimately succeed on these claims. (Doc. 20 at 15–16.) But this is not a motion to dismiss; under section 1447(e), the Court need only determine whether the claim "seems" valid. *See Hardin*, 813 F. Supp. 2d. at 1174; *IBC Aviation Servs., Inc.*, 125 F. Supp. 2d 1012–13. See also

*Plasse v. Ford*, No. 2:17–cv–01136–TLN–EFB, 2017 WL 6033075, at *5 (E.D. Cal. Dec. 6, 2017) (When evaluating this factor, courts "'need only determine whether the claim seems valid,' which is not the same as the standard in either a motion to dismiss or a motion for summary judgment.") (citations omitted).

Applying the proper standard, the undersigned determines that the negligence claim against Etchegoinberry, Mercury, and Flores "seems valid." Contrary to EVA Airways' contention, Plaintiff has alleged the necessary elements of negligence under California law, *i.e.*, that these defendants "owed Plaintiff a duty to exercise reasonable care in the shipment" of Plaintiff's thermal airship and that they "acted unreasonably in carrying out their duties under the agreement to transport that property," causing damage to Plaintiff's property, Stoker Decl. ¶ 3 and Ex. 1 ¶¶ 54–55. *See Ladd v. Cty. of San Mateo*, 12 Cal. 4th 913, 917 (1996) ("The elements of a cause of action for negligence are well established. They are (a) a *legal duty* to use due care; (b) a *breach* of such legal duty; [and] (c) the breach as the *proximate or legal cause* of the resulting injury.") (internal quotation marks removed, emphasis in original); JUDICIAL COUNCIL OF CALIFORNIA CIVIL JURY INSTRUCTION 400. Additionally, to the extent that Plaintiff is proceeding under a theory of respondeat superior in its claims against Panalpina, *see, e.g.*, Stoker Decl. ¶3 and Ex. 1 ¶ 12, , such doctrine "clearly contemplates that the negligent employee whose conduct is sought to be attributed to the employer at least be specifically identified, if not joined as a defendant." *Patterson ex rel. Cobb v. Bankers Life & Cas. Co.*, No. Civ. S-06-1184 FCD KJM, 2006 WL 3388544, at *3 (E.D. Cal. Nov. 22, 2006) (quoting *Munoz v. City of Union City*, 120 Cal. App. 4th 1077, 1113 (2004)).

EVA Airways further asserts that Plaintiff's bailment claim is invalid because it only alleges the existence of a bailment contract with Panalpina and not with the non-diverse defendants. (Doc. 20 at 15.) Without evaluating the merits of that claim, EVA Airways ignores the fact, however, that Plaintiff alleges that Etchegoinberry, Mercury, and Flores were agents of "one or more of the remaining Defendants" (Stoker Decl. ¶ 3 and Ex. 1 ¶ 12), and therefore could have been—and in Flores' case, was—acting as Panalpina's agents during Plaintiff's alleged bailment relationship with

Panalpina.[6] Plaintiff's allegations also raise the possibility that an *implied* bailment contract was created at when Etchegoinberry "picked up the thermal airship from Plaintiff's place of business and transported in to Los Angeles Airport," Stoker Decl. ¶ 3 and Ex. 1 ¶¶ 8. *See Whitecombe v. Stevedoring Servs. of Am.,* 2 F.3d 213, 316 (9th Cir. 1993) ("California law generally defines a bailment as the delivery of a thing in trust for a purpose upon an implied or express contract.") (internal citation omitted); *Earhart v. Callan*, 221 F.2d 160, 163 (9th Cir. 1955) (defining bailment as "the relationship arising when personal property is delivered to another for some particular purpose upon an express or implied contract to redeliver the goods when the purpose has been fulfilled or to otherwise deal with the goods according to the bailor's directions"). In any event, the undersigned cannot conclude that Plaintiff has not alleged an articulable bailment claim against the non-diverse defendants.

Finally, EVA Airways contends that "it is beyond reasonable dispute that [P]laintiff's claim for trespass to chattels does not seem valid" given the "extreme rarity of trespass to chattels as a tort theory." (Doc. 20 at 16.) However "rare" the claim of trespass to chattels may be, it still remains a recognized claim under California law. "Trespass to chattel . . . lies where an intentional interference with the possession of personal property has proximately caused injury." *Intel Corp. v. Hamidi*, 30 Cal. 4th 1342, 1350–51 (2003). Plaintiff alleges that Etchegoinberry and Mercury "intentionally interfered" with Plaintiff's thermal airship from the time it left Plaintiff's place of business to the time it arrived in Taiwan, causing damage and unauthorized usage of the airship's propane to "transport illegal substances into Taiwan." (Stoker Decl. ¶ 3 and Ex. 1 ¶¶ 78–81.) With respect to Flores, Plaintiff alleges that he forged Plaintiff's representative's signature on commercial shipment invoices and packing lists so that the thermal airship could be re-routed from Skyrainbow, its approved destination, to Win Air, an unapproved destination, for an unintended purpose and causing damage to the property as a result. (*Id*. ¶¶ 74, 79–83.) In view of these allegations, Plaintiff's

---

[6] That Flores was Panalpina's employee at the time does not detract from the presumptive validity of Plaintiff's contractual bailment claim. *See, e.g., IBC Aviation Services, Inc*., 125 F. Supp. 2d at 1012–13 (recognizing the possibility of a valid breach of contract claim against individual employee who alleged to be "directly involved in the alleged breach" of an agreement to provide cargo handling services to his employer). The authority relied on by EVA Airways, which concerns whether the representative of a contracting party may be held liable for the substantive tort of interfering with the contract, is inapposite. (*See* Doc. 20 at 16 (citing *Mintz v. Blue Cross of California*, 172 Cal. App. 4th 1594, 1605 (2009)).)

15

1 | trespass to chattels claim also appears valid.

Because Plaintiff has articulated seemingly valid claims against the non-diverse defendants, this factor weighs in favor of granting the Motion. *See* Taylor v. Honeywell Corp., No. C 09–4947 SBA, 2010 WL 1881459, at *3 (N.D. Cal. May 10, 2010) ("The existence of a facially legitimate claim against the putative defendant weighs in favor of permitting joinder under section 1447(e)").

### f. Whether Denial of Joinder Will Prejudice Plaintiff

EVA Airways contends that denial of the Motion would not prejudice Plaintiff because it could pursue claims against Etchegoinberry, Mercury, and Flores in a separate forum. (*See* Doc. 20 at 17.) In *Taylor v. Honeywell Corp.*, the court found that denying the plaintiffs' motion would be "unduly prejudicial to Plaintiffs because it would require them either to abandon the potential claims [they have] against [the proposed defendants] or litigate the same legal issues and facts as this case in state court." 2010 WL 1881459, at *4. Because such duplicative and redundant litigation would "result in a waste of judicial and the Plaintiffs' resources, as well as risk inconsistent results," the *Taylor* court found that the final factor favored granting the plaintiffs' motion to amend and to remand. *Id*.

The undersigned similarly finds that precluding Plaintiff from joining the non-diverse defendants would prejudice Plaintiff because, as it points out (*see* Doc. 22 at 7), it would be required either to abandon potentially viable claims against Etchegoinberry, Mercury, and Flores or to initiate a duplicative litigation in state court. Thus, this factor favors granting the Motion.

### IV. CONCLUSION AND ORDER

As described above, five of the six factors weigh in favor of allowing joinder of Etchegoinberry, Mercury, and Flores as defendants. The undersigned concludes that Plaintiff should be allowed to submit his proposed First Amended Complaint despite the fact that the pleading destroys diversity, having shown "good cause" under Fed. R. Civ. P. 16(b)(4) for the untimely amendment.

Accordingly, the undersigned hereby **RECOMMENDS** that Plaintiff's Motion to Modify the Scheduling Order and Amended Motion for Leave to File First Amended Complaint (Doc. 15) be **GRANTED** and Plaintiff be directed to file its First Amended Complaint, attached as Exhibit 1

| | |
|---|---|
| 1 | to the Stoker Declaration (Doc. 15-1), forthwith. |
| 2 | Because that amended pleading joins defendants whose presence in this litigation destroys |
| 3 | the diversity on which this Court's jurisdiction rests, upon its filing this Court would no longer have |
| 4 | subject matter jurisdiction under 28 U.S.C. § 1332. The undersigned further **RECOMMENDS** that |
| 5 | upon filing of the First Amended Complaint this case be **REMANDED** to the originating court, the |
| 6 | Superior Court of California, County of Fresno. It is accordingly unnecessary to adjudicate the issue |
| 7 | of whether Plaintiff's failure to attach complete copies of the Air Waybills renders the First |
| 8 | Amended Complaint defective (*see* Doc. 19), and the undersigned declines to do so. |

IT IS SO ORDERED.

Dated: **August 13, 2019**           /s/ *Sheila K. Oberto*
                                                            UNITED STATES MAGISTRATE JUDGE